**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **MARY ANTON JONES, AARON KIRBY,** ) <br> **MONTE TURNER AND RONALD LAWRENZ,** ) <br> ) <br> **Plaintiffs,** ) <br> ) **CIVIL ACTION** <br> **v.** ) <br> ) **No. 03-2369-KHV** <br> **MICHAEL WILDGEN, DAVID CORLISS,** ) <br> **BARRY WALTHALL, VICTOR TORRES,** ) <br> in their individual and official capacities, ) <br> **CITY OF LAWRENCE, KANSAS, LEE SMITH,** ) <br> **SHAWN MURPHY and BRIAN JIMINEZ** ) <br> in their individual and official capacities, ) <br> ) <br> **Defendants.** ) <br> _____) | |

**MEMORANDUM AND ORDER**

Plaintiffs bring suit against the City of Lawrence, Kansas and various City officials under 42 U.S.C. § 1983, alleging that defendants violated plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments when they enforced a city ordinance which requires that rental properties in certain residential areas be licensed and inspected. This matter comes before the Court on defendants' Motion For Summary Judgment (Doc. #64) filed June 9, 2006. For reasons stated below, the Court finds that defendants' motion should be sustained.

**Summary Judgment Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d

1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on their pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

**Factual Background**

For purposes of summary judgment, the following facts are uncontroverted or, where controverted, viewed in the light most favorable to plaintiffs.

The City of Lawrence ("the City") is a municipal corporation under the law of the State of Kansas. The City has adopted ordinances that impose occupancy limits on residential rental property in areas which are zoned for single family residences. Ordinance Nos. 7323, 7326 and 7478, codified at Chapter VI, Article 13 of the City Code. The ordinances provide that except for owner-occupied property, no single-family dwelling in an RS (single family) zoning district shall be leased for occupancy by more than three unrelated persons who do not constitute a family as defined by the zoning code. City of Lawrence Code Section 6-1306. Violations are municipal offenses and may cause an owner's rental license to be revoked. The preamble to Ordinance No. 7326 includes the following findings by the governing body of the City of Lawrence:

> [T]he general public health, safety and welfare of the community is preserved and sustained with reasonable regulations designed and enforced to encourage the nuisance-free and peaceable enjoyment of residents in single family neighborhoods; and
>
> [T]he City has extensive regulations to ensure appropriate review of certain multiple family dwelling units prior to construction of such multiple family dwelling units, including but not limited to site plan review for such units, such regulations not being generally applicable to single family structures in single family zoning districts; and
>
> [A]dditional reasonable regulation of the rental of dwellings in single family residential zoning districts is necessary and appropriate for the general public health, safety, and welfare; [and]
>
> [T]he public health and safety of tenants living in rental single family dwellings is enhanced with licensing and regulatory requirements on rental dwellings in single family zoned districts[.]

Ordinance No. 7326 at 1.

3

Section 6-1302 requires that every owner of a single-family dwelling in an RS zoning district obtain an annual rental licensing permit before leasing it to an unrelated person. The permit is valid for one year if the $25.00 licensing fee is paid and the owner and the property are in compliance with the code. City Code Section 6-1302. The property must be inspected at least once every three years to ensure compliance, Section 6-1304, and the City may revoke a rental permit where violation of any of the following ordinances is found to adversely affect the public safety of tenants or the rights of nearby residents to the quiet enjoyment of their property:

   (A)   Noise Ordinance;

   (B)   Environmental Code;

   (C)   Anti-litter ordinance;

   (D)   Zoning Code;

   (E)   Disorderly House Nuisance Ordinance;

   (F)   Uniform Housing Code.

Section 6-1305 (internal citations omitted).

Under Section 6-1307, whenever necessary to make inspection to enforce the ordinances, or upon reasonable cause to believe that the dwellings present unsafe, dangerous or hazardous conditions, public officers may enter, inspect and investigate rental dwellings. Such entry must be "pursuant to the law" and if the building is occupied, the officer must first request entry. If entry is denied, the officer must pursue an administrative search warrant "or other lawful means." Section 6-1307.

Section 6-1308 provides that a rental license may be revoked and that under certain circumstances, the owner may be placed on probation. Specifically, that section provides as follows:

4

(A) Any person found by the public officer to be in violation of this Article shall be sent a notice of such violation by the public officer. The notice shall be sent by certified mail, postage prepaid, return receipt requested. The notice shall state:

(1) The condition which has caused the violation of this Article;

(2) Whether the proposed enforcement action is to place or continue the permittee or person on a probation status or whether the proposed enforcement action is to revoke the license; and

(3) That the person in violation shall have fifteen (15) days from the date of the notice to request in writing a hearing before the governing body on the violation. The request in writing for a hearing before the governing body shall stay pending enforcement actions.

(B) The placement of the owner on probation status shall be to provide a reasonable period of time for the owner to correct or alleviate conditions giving rise to the notice of violation. The probation status may be conditioned by the City with reasonable reporting requirements and time periods for corrections. The failure to successfully complete the requirements of the probation status shall be grounds for the initiation of the revocation of the license granted pursuant to this Article.

(C) The public officer, or the Governing Body upon the conclusion of a requested hearing, shall have the authority to revoke a license granted pursuant to this Article or place the property owner on probation status. In determining whether to revoke the license or place the property owner on probation status, the public officer or the Governing Body shall take into account mitigating circumstances, including the legal authority of the property owner to order the vacation of the property by tenants whose conduct has caused the violation(s).

Section 6-1308.

Violators are subject to fines from $250.00 to $1,000.00. Section 6-1309.

During the time relevant to this action, Mike Wildgen was City Manager. Defendant David Corliss was Assistant City Manager and Director of Legal Services. Barry Walthall was City Codes

5

Enforcement Manager. Victor Torres was the City Director of Neighborhood Resources. Lee Smith and Shawn Murphy worked as Zoning Enforcement Officers.

### Tenant Plaintiff Mary Anton Jones

In 2002, Mary Anton Jones and her husband rented a single-family home at 1721 Miller Drive in Lawrence, Kansas. In March or April of 2002, Jones' landlord called her and informed her that the City had scheduled an inspection of the house which Jones was leasing. Jones told her landlord that she preferred that her house not be inspected. Nonetheless, City inspectors went to Jones' home to inspect it. At the time, Jones had no concern about the safety or condition of the property, and she did not believe that the house was in violation of any provisions of the City code. Jones told the inspectors that she believed that an inspection would violate her constitutional rights and that she would not permit them to enter.[1] At that point the inspectors left.

On May 16, 2002, City Zoning Enforcement Officer Shawn Murphy obtained from the Douglas County District Court a warrant to inspect Jones' home. The warrant and accompanying affidavit recite the statutory authority for the inspection and the reason for requesting the warrant. That same day, City officials served the warrant and inspected the home.[2] Jones and her husband were present during the inspection. After the inspection, the City informed Jones' landlord that the inspectors had found several violations of the City Code.[3] Jones' landlord corrected the violations. On June 14, 2003, City officials re-inspected Jones' home pursuant to a warrant, to confirm that

---

[1]   The record does not identify the inspectors.

[2]   The record does not identify the officials who served the warrant and searched the home.

[3]   Jones did not consider the violations important to her health or safety.

violations had been corrected.

### Tenant Plaintiff Aaron Kirby

In July of 2003, Aaron Kirby lived in a rental property at 1402 Pennsylvania in Lawrence, Kansas. His landlord was Bill Harmon. Harmon told Murphy (City Zoning Enforcement Officer) that Kirby did not want to have his house inspected, and the City did not inspect it.

### Tenant Plaintiff Monte Turner

From July of 2001 to February 5, 2003, plaintiff Monte Turner was a tenant of A&S Rental ("A&S") at 924 Murrow Court in Lawrence, Kansas. At some point, A&S Rental told Turner that the City was going to inspect the property. Turner told A&S that he objected to any inspection. The City gave Turner a notice of inspection, and he refused to allow inspectors to enter the house. On September 25, 2002, the District Court of Douglas County, Kansas issued an administrative warrant for an inspection. The warrant and accompanying affidavit recite the statutory authority for the inspection and the reason for requesting the warrant. The next day, while Turner was at work, City inspectors entered the house with police and inspected it. The inspectors did not find any violations.[4]

In March of 2003, Turner moved to an apartment in a multi-family rental property in an area which is not zoned for single-family residency. His current rental unit has not been subjected to the same inspections as homes in single-family zoned neighborhoods.

### Landlord Plaintiff Ronald Lawrenz

Ronald Lawrenz owns two rental properties in single-family residential districts subject to

---

[4] The inspectors did not require strict compliance with code for ingress/egress windows in sleeping rooms and ignored deficiencies in the roof and other areas.

the City rental ordinance. On July 24, 2003, Lawrenz received two notices to appear in municipal court for failing to register his rental properties at 420 Mississippi Street and 437 Maine Street, in violation of Section 6-1304. His attorney sent a letter to the Neighborhood Resources Advisory Committee asking to appeal the notices. The ordinance does not provide a right to appeal the registration requirement.[5] Rather, the municipal court provides the process for charges of failure to register.[6] Ultimately, the City dismissed the charges for failing to register because Lawrenz agreed to register and allow inspections. Lawrenz paid no fines or court costs related to the notices to appear for failure to register.[7]

### Claims

The tenant plaintiffs – Jones, Kirby and Turner – assert that defendants violated their Fourth Amendment rights by unlawfully conducting searches and seizures of their property without a "proper legal basis." Pretrial Order (Doc. #66) filed June 12, 2006 at 4. The landlord plaintiff –

---

[5] The ordinance does provide a hearing to appeal a finding that health and safety provisions have been violated.

[6] The notice which Lawrenz received in 2003 was not a notice of a violation, but a notice to register and allow inspections. Lawrenz did not register his properties until 2005, and they were not inspected until 2005. At that time, inspectors discovered minor violations which Lawrenz corrected.

[7] In their statement of additional facts, plaintiffs include many facts which supposedly show that the real motivation for the ordinance scheme is to eliminate single-family home rental properties from certain areas of the City. Briefly summarized, these facts are that the City chose to allow certain deficiencies in Turner's property even though it did not comply with City codes related to health and safety issues; the City did not inspect Kirby's former residence even though it was subject to the ordinacnce scheme; the City has never taken enforcement action against owner-occupied property for violation of maximum occupancy limits of the ordinance scheme; the City has not sought administrative warrants to enforce the ordinance scheme for several years; and the City does not have an accurate list of properties subject to the ordinance.

Lawrenz – asserts that defendants violated his Fourteenth Amendment right to due process because they did not allow him to appeal the notice to appear for failure to register his property. Defendants assert that they are entitled to summary judgment on both claims.[8] As to the Fourth Amendment claim, defendants assert that (1) the searches did not violate the Fourth Amendment rights of Jones or Turner because the searches were conducted pursuant to valid warrants, and, alternatively, Jones and Turner have not identified the individuals who conducted the search; and (2) as to Kirby, no search occurred. As to the Fourteenth Amendment claim, defendants assert that Lawrenz was not entitled to appeal the notice of failure to register his rental properties and that in any event the City dismissed the charges that he failed to register.

## Analysis

I.   Fourth Amendment Claims

Defendants assert that they are entitled to summary judgment on the claim that defendants violated plaintiffs' Fourth Amendment rights when they searched their homes to conduct

---

[8] The individual defendants also assert that they are entitled to summary judgment based on qualified immunity. To determine whether plaintiffs can overcome the qualified immunity defense, the Court first determines whether plaintiffs have asserted a violation of a constitutional or statutory right. Roska v. Peterson, 328 F.3d 1230, 1239 (10th Cir. 2003). The Court then decides whether that right was clearly established such that a reasonable person would have known that the conduct violated that right. Id. (citing Garramone v. Romo, 94 F.3d 1446, 1449 (10th Cir. 1996)). Order is important; the Court must decide first whether plaintiffs have alleged a constitutional violation, and only then proceed to determine whether the law was clearly established. Roska, 328 F.3d at 1239 (citing Saucier v. Katz, 533 U.S. 194, 200 (2001)). On the motion to dismiss, the Court found that plaintiffs had alleged a violation of a constitutional right. On summary judgment, however, plaintiffs must come forward with evidence to support that claim. Because the Court finds that plaintiffs have not produced evidence that defendants violated their Fourth or Fourteenth Amendment rights, it need not address whether the law was clearly established at the time of the alleged violations.

inspections authorized by the ordinance. Specifically, defendants contend (1) as to Jones and Turner, the searches were conducted pursuant to valid administrative warrants, and in any event, Jones and Turner have not identified the individuals who conducted the search; and (2) as to Kirby, no search even occurred.

      A.      Jones and Turner

Defendants first assert that the searches were per se reasonable because they were conducted pursuant to valid warrants. The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Fourth Amendment protects the privacy and security of individuals against arbitrary invasions by the government. New Jersey v. T.L.O., 469 U.S. 325, 335 (1985). The Fourth Amendment only proscribes searches that are unreasonable. Skinner v. Ry. Labor Executives Ass'n, 489 U.S. 602, 619 (1989). Except in carefully defined classes of cases, a search of property is unreasonable unless is has been authorized by a proper search warrant. Camara, 387 U.S. at 528-29 (power of municipal building, fire, health and other officials to enter building without permission for performance of duties, in absence of emergency, violates constitutional guarantees against unreasonable search and seizure unless search authorized by valid search warrant); *overruled on other grounds by* Califano v. Sanders, 430 U.S. 99 (1977); cf. Makula v. Vill. of Schiller Park, No. 95 C 2400, 1995 WL 755305, at *6 (N.D. Ill. Dec. 14, 1995) (onus of demonstrating probable cause on municipality; owner's application for license for multiple family dwelling not voluntary consent to inspection); Hometown Co-Operative Apts. v. City of Hometown,

10

515 F. Supp. 502, 504 (N.D. Ill. 1981) (where no consent to inspection, warrant should be requested from court).

Plaintiffs allege that in attempting to enforce the ordinance, City agents entered their homes "with no proper legal basis" for searches and inspections. Pretrial Order (Doc. #66) at 5. In response to defendants' motion for summary judgment, however, plaintiffs have produced no evidence that any defendant searched, or caused a search of, plaintiffs' homes without consent or a valid warrant. The record contains evidence that the searches of the Jones and Turner residences were based on administrative warrants which authorized the inspection as provided by the ordinance.

Further, although plaintiffs assert that the search warrants were not based on "probable cause," an administrative search does not require the same the kind of "probable cause" required for a criminal search. See O'Connor v. Ortega, 480 U.S. 709, 722-23 (1987). Instead, an administrative warrant can be issued "if there is a showing that reasonable legislative or administrative standards for conducting an inspection are satisfied." Id. at 723. Here, the warrants and accompanying affidavits recite the statutory provision for the inspection and the reason for requesting the warrants. Plaintiffs have produced no evidence that defendants conducted any search in violation of the Fourth Amendment, and defendants are entitled to summary judgment on these claims.

B.   Kirby

As to Kirby, defendants assert that they are entitled to summary judgment because the uncontroverted facts show that defendants never conducted any search of Kirby's home. Plaintiffs respond that even though defendants have not searched his residence, the City at any time could

choose to search his present residence. The mere possibility of a future controversy is not enough to defeat summary judgment. See Tobin v. City of Peoria, Ill., 939 F. Supp. 628, 635 (C.D. Ill. 1996) (possibility that circumstances will arise in future does not state case or controversy ripe for judicial determination). The Court finds that defendants are entitled to summary judgment on Kirby's Fourth Amendment claim.

II.     Procedural Due Process

Defendants assert that they are entitled to summary judgment on Lawrenz' Fourteenth Amendment claim that they deprived him of a property right without procedural due process because they did not allow him to appeal the notice to appear for failure to register his property. Defendants first point out that the ordinance does not provide for appeal of a notice for failure to register, and assert that the municipal court process provides the required procedural due process. Alternatively, defendants note that Lawrenz has not paid any fines or court costs and has not lost any use of his rental property, and therefore he has not been deprived of any property right.

Generally, to prevent "substantively unfair or mistaken deprivations," individuals must receive notice and an opportunity to be heard before the government deprives them of property. See United States v. James Daniel Good Real Prop., 510 U.S. 43, 48, 53 (1993) (quoting Fuentes v. Shevin, 407 U.S. 67, 80-81 (1972)); see also Samuels v. Meriwether, 94 F.3d 1163, 1166-67 (8th Cir. 1996) (notice of building problem and opportunity to appear before municipal board satisfies procedural due process). To state a procedural due process claim, plaintiff must show that the government process which he must follow is insufficient to properly protect his ownership rights. See Winters v. Bd. County Comm'rs, 4 F.3d 848, 856 (10th Cir. 1993); Walden v. Carmack, 156 F.3d 861, 874 (8th Cir. 1998). The deprivation of procedural due process is not complete unless and

until the state fails to provide adequate constitutionally essential procedures. Winters, 4 F.3d at 856.

Lawrenz alleges that after he received a notice of violation and requested a hearing, the City denied that hearing and filed a criminal complaint against him. The record reflects otherwise. Under the ordinance scheme, failure to register one's property is a municipal offense. Section 6-1309. Once registered, after a property is inspected, an owner may seek a hearing regarding any violation. In this case, Lawrenz did not register his properties until 2005, and they were not inspected until 2005. The notice and order which he received in 2003 was not a notice of a violation, but a notice to register and allow inspections. The ordinance does not provide a right to appeal the registration process. The municipal court provides a legally sufficient process for failure to register. See DiPiero v. City of Macedonia, Ohio, 180 F.3d 770, 778 (6th Cir. 1993) (municipal court and appeals process provided adequate procedural due process). Further, because Lawrenz agreed to register and allow inspections, the City ultimately dismissed the charges of failure to register for which Lawrenz requested a hearing. Lawrenz was not fined and did not pay any court costs. He can point to no facts which support his procedural due process claim. Defendants therefore are entitled to summary judgment on this claim.

**IT IS THEREFORE ORDERED** that defendants' Motion For Summary Judgment (Doc. #64) filed June 9, 2006 be and hereby is **SUSTAINED**.

Dated this 5th day of October, 2006 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge